IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Eastern Shawnee Tribe of Oklahoma,                    Case No. 3:05CV7267

        Plaintiff,

        v.                                                                ORDER

State of Ohio, et al.,

        Defendants.

This is a land possession case, in which the Eastern Shawnee Tribe of Oklahoma (Tribe) is suing the State of Ohio and its officials, entities and municipalities, as well as individual land owners, claiming aboriginal possessory land rights. The Tribe claims title and the right of occupancy to particular lands of Ohio currently owned, occupied, and used by the State of Ohio and landowners.

Pending is the Ohio Attorney General's motion to intervene as a matter of right. For the following reasons, the Attorney General's motion will be granted.

**Factual Background**

The Tribe asserts it is a descendant of aboriginal clans of Shawnee. The Tribe claims these groups occupied Ohio during the 1700s until they were expelled by American settlers and forced onto reservations. The Tribe claims ancestral ownership of some of the original land, as well as reservation land obtained through treaties with the United States government.

The Tribe claims that land sales to individual settlers were invalid under the Indian Non-Intercourse Act.  25 U.S.C. § 177.  The Tribe also alleges land ceded to it, the Hog Creek and Wapaghkonetta Reservations, remains tribal land, because title was never properly relinquished.  Finally, plaintiff alleges interference with its treaty rights to use of land.   The Eastern Shawnee Tribe claims hunting, fishing, and gathering rights to land guaranteed to the tribe through previous treaties.

At the current stage of litigation, the Attorney General seeks to intervene in order to prevent this court's approval of settlements.  The Attorney General represented the State of Ohio in this case until July 11, 2006, when the Tribe voluntarily dismissed its claims against the State.  The Attorney General filed the present motion to represent the interests of the State of Ohio and the citizens of Ohio in settlements that the Tribe and certain defendants have submitted for judicial approval.  The Attorney General claims the settlements seek to evade Ohio law.

Specifically, the Attorney General opposes the following language in the settlements: "the Tribe has a historical nexus to the lands subject to the settlements which lie within the Tribes aboriginal homelands."  The proposed settlements also state the Tribe will apply for the land to be taken into trust by the federal government, and thereafter be subject to federal law.  The settlements require the signature of this Court to be acceptable to the parties to the settlements.  The Attorney General contends that this Court's approval might be construed as a blanket acceptance of the historical status of the Eastern Shawnee Tribe.  The Attorney General opposes this judicial endorsement of alleged, but unproven, factual allegations in the Tribe's complaint. .

The citizens of Ohio have voted twice against proposed amendments to the State Constitution which would allow gambling.  The Ohio General Assembly has rejected numerous proposals to

2

legalize casinos.  While there is another proposed amendment on the November, 2006, ballot, thus far Ohio and its citizens have consistently opposed introduction of casino gambling.

## Discussion

Intervention as a matter of right is governed by Fed. R. Civ. P. 24(a)(2).  "Upon timely application anyone shall be permitted to intervene in an action . . .  when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The criteria for intervention as a matter of right in the Sixth Circuit, under Fed. R. Civ. P. 24(a)(2), are: 1) timeliness; 2) a substantial legal interest; 3) the possibility of impairment of the ability to protect the substantial interest absent intervention; and 4) inadequate representation by parties already in the case. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

In the Sixth Circuit, the standard for intervention as a matter of right is lenient.  An intervenor does not need the same standing to intervene as is required to initiate a lawsuit. *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 536-9 (1972)).  An intervenor need not have a "specific legal or equitable interest" to qualify for intervention under Rule 24(a)(2). *Id.* Rule 24 "is broadly construed in favor of potential intervenors." *Id.* at 950.

### 1. The Application for Intervention is Timely

Determination of whether an application to intervene is timely depends on the "context of all relevant circumstances." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). A court

is to consider: 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; 4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and 5) the existence of unusual circumstances militating against or in favor of intervention.  *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

### a.  How Far the Suit has Progressed

The Attorney General filed the motion to intervene eight days after Plaintiff submitted the settlements to the Court for approval.  Plaintiff states that the Attorney General has had knowledge of settlement proceedings since January, 2006.  While this may be true, the Attorney General may not have had reason to intervene until he had knowledge of the details of the final settlement proposal.  As stated in *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004), "a party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit."

The Attorney General was also representing a party to the case until July 11, 2006.  Until then he had no reason to intervene- he was already in the case. Although the motion comes after the litigation has been pending for a considerable period, it is not untimely; indeed, it is a prompt response to the recent submission of settlement documents.  This rapid response distinguishes the present facts from those in *Stupak-Thrall v. Glickman*, 226 F.3d 467 (6th Cir. 2000).  The motion is timely.

### b.  Purpose of Intervention

The purpose of the Attorney General's motion to intervene is to halt court approval of settlements that he contends are inappropriate and misleading.  *See* Reply at 2*.*  Whether this contention is correct or incorrect is presently irrelevant; a motion to intervene can be granted regardless of the possibility of success of the applicant's purpose for intervention.  *Deutsche Fin. Servs. Corp. v. Schwartz Homes, Inc.,* 187 F.R.D. 542, 546 (N.D. Ohio 1999). The purpose itself is valid, and lends itself to a finding of timeliness for the motion as a whole.

### c.  Possibility of Intervening Sooner

The Attorney General was unable to intervene while he was still representing a party to the case.  After the State of Ohio was dismissed from the case, the Attorney General sought to intervene specifically in response to the proposed settlements.  As in *Grubbs v. Norris,* the proposed remedy prompts the motion to intervene.  *See Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989).  Thus, a court cannot deny intervention solely because the case is in "remedial stages." *Id.*  The Attorney General could not intervene before knowing the settlement proposition and how its interest would be affected.  Thus, there was no realistic possibility for the Attorney General to intervene sooner.

### d.  Prejudice to Original Parties

Prejudice to the original parties may exist, because the Attorney General's intervention may upset possible settlements and prolong the litigation.  This factor, however, does not weigh heavily enough to exclude the Attorney General from this case when he seeks to represent the valid interests of the citizens of Ohio.  Indeed, disturbing the proposed settlements is precisely what the Attorney General seeks to accomplish.  The Attorney General has a valid purpose for intervening, and for intervening at this point in the litigation in particular.  Thus, the Attorney General's motion is timely.

### e.  Unusual Circumstances

There are no unusual circumstances to be noted in determining the timeliness of this motion.

### 2.  The Applicant has a Substantial Legal Interest in the Litigation

Once timeliness has been established, the intervenor must also show a substantial legal interest in the litigation. The Attorney General represents the interests of the State of Ohio and its citizens. The Attorney General can represent the interests of the citizens of Ohio. *See State of Ohio v. United Transp., Inc.,* 506 F. Supp. 1278, 1281-2 (S.D. Ohio 1981)**.**

The citizens of Ohio have a legal interest in land use regulations.  In particular, Ohio constituents have demonstrated their interest in prohibiting gambling on Ohio lands**.** *See Reply* at 13. The Attorney General also represents the State of Ohio's sovereign right to govern activities of the State, and thus the State's interest in land transactions that may affect the State's governance.

To be sure, introduction of casino gambling will not flow immediately or even at all from the settlements. The Tribe must take several more steps before building and operating casinos.  But acquiring land via a "settlement of a land claim" is an essential first step.[1]

The people of Ohio and the State of Ohio have a substantial interest in whether the purchased land will remain under state control, and thus subject to state law, and whether Ohio gambling regulations will be enforceable. The Sixth Circuit has repeatedly adopted "a rather expansive notion of the interest sufficient to invoke intervention as of right." *Michigan State AFL-CIO*, 103 F.3d at 1245. The Sixth Circuit has previously stated its preference that "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Michigan State AFL-CIO* at 1247.  Thus, the

---

[1] The general position of the federal government as trustee to Indian lands, and the intricate involvement of the Bureau of Indian Affairs in the functioning of tribes, means an application for trust status of purchased Indian land is not a reason for immediate suspicion of gaming.

interest of the people of Ohio and the State of Ohio in a land settlement that could inhibit the application of state law is sufficient to support a motion to intervene.

### 3. Result of Litigation Without Intervention Could Impair the Applicant's Ability to Protect Interests of Ohio Citizens

The standard set forth in *Purnell* for this third prong of intervention is whether impairment of a substantial legal interest is "possible" if intervention is denied - a standard recognized as "minimal." *Michigan State AFL-CIO* at 1247. As the Attorney General alone can protect the interests of the citizens of Ohio, denial of intervention will impair the ability of the Attorney General to protect those interests. The Attorney General's ability to pursue future litigation against gaming or other independent claims does not provide "adequate protection." *Purnell v. City of Akron*, 925 F.2d 941, 949 (6th Cir. 1991).

### 4. Current Parties Do Not Adequately Represent Applicant's Interests

The intervenor bears the burden of proving it is inadequately represented by current parties to the suit. *Meyer Goldberg, Inc. v. Goldberg,* 717 F.2d 290, 293 (6th Cir. 1983). However, the intervenor need only show that current representation "may be" inadequate. *Michigan State AFL-CIO* at 1247. As it is unlikely another party will oppose the settlements on behalf of the people of the state of Ohio, the Attorney General can intervene to represent the interests of the citizenry of Ohio. *See id.* When the interest of an absent party is not represented, there is inadequate representation. *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991). The Attorney General alone can adequately represent these interests of the citizens of Ohio and the State of Ohio.

Because the Attorney General represents an important interest of the people and the State of Ohio in this litigation, and his motion is timely, the motion to intervene is granted.

### Conclusion

It is therefore,

ORDERED THAT the motion of the Attorney General of Ohio for leave to intervene be, and the same hereby is granted.

So ordered.

> /s/ James G. Carr
> James G. Carr
> Chief Judge