IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Eastern Shawnee Tribe of Oklahoma,            Case No. 3:05CV7267

        Plaintiff,

v.                                             ORDER

State of Ohio, et al.,

        Defendant.

      This is a suit by an American Indian Tribe claiming title to aboriginal lands in Ohio allegedly possessed, used, and unlawfully conveyed during the Nineteenth Century by the Tribe's ancestors. Several of the original defendants have been dismissed on plaintiff's motion.

      The State of Ohio, which had been among the dismissed parties, was thereafter, over the Tribe's objection, allowed to intervene and thereby re-enter the case. Its purpose in doing so was to be heard on its opposition to a proposed order accepting Settlement Agreements between the plaintiff and certain settling defendants. I declined to sign that proposed order as drafted and submitted, because, *inter alia*, it would have had me making certain factual findings as to disputed matters.

      Pending is a motion by the Tribe and some of the defendants for entry of a revised proposed order of dismissal and approval of the parties' Settlement Agreements. For the reasons that follow, I decline again to sign the order proposed by the plaintiff and settling defendants.

**Discussion**

      I was reluctant to enter the original proposed order primarily for two reasons: 1) that I would thereby be declaring, or might be perceived as having declared, that the settlement was of "land

claims" having some sort of validity, either actual, presumptive, or perceived; and 2) I would be placing my signature on something that I had not drafted, especially where the legal and other consequences from entering the order were far from clear and predictable.

The Tribe possesses no land in Ohio – either aboriginal, by way of treaty or reservation, or otherwise. Its ultimate purpose in this litigation is to obtain land in this state on which it can construct and operate a casino [or casinos]. To achieve this purpose, the Tribe must, under the Indian Gaming Regulation Act (IGRA), 25 U.S.C. § 2710 et seq., have acquired the land for the casino as part of "a settlement of a land claim." 25 U.S.C. § 2719 (b)(1)(B)(I).

The Attorney General contends that this suit is a sham, and that its ultimate purpose is to create the misleading, if not false appearance that any settlement constitutes a "a settlement of a land claim" under the IGRA. The Attorney General asserts that the claims being asserted by the Tribe are not *bona fide*, and are without colorable merit. The State objects to my signing any order that would give even a veneer of plausibility to an assertion under the IGRA that the land being acquired through the proposed settlement has been obtained "in settlement of a land claim."

The revised proposed order and attached Settlement Agreement do not entirely eliminate the possibility that entry of the order as submitted might be construed as a finding (which I expressly refused to make via the original proposed order), that "land claims" were being settled. This is so, because the revised proposed order provides, in part:

> The Court shall retain jurisdiction to enforce the terms of this Order and each of the attached settlement agreements, *which are incorporated by this reference as if fully set forth* for purposes of continuing jurisdiction and enforcement as required by *Kokkonen* . . . .

Doc. 218, p. 3, ¶ 8 (Emphasis supplied).

2

Among the provisions of the Settlement Agreements that would be "incorporated . . . as if fully set forth" into the order are:

§ I.   . .

"[the Tribe] is the modern day political successor in interest to the historic Shawnee Nation .   .   .   .;

\* \* \* \* \*

the Tribe has a historical nexus to [the] lands [in dispute];

\* \* \* \* \*

the Tribe desires to have the land at issue in this Agreement accepted by the Secretary of the Interior .   .   . as part of the settlement of the Tribe's land claims .   .   .   .;

\* \* \* \* \*

§ II.

1. This Agreement involves claims of the Tribe involving certain lands in the State of Ohio .   .   .   .

\* \* \* \* \*

2. The Tribe has viable and serious claims concerning certain land in the State of Ohio, and particularly concerning the subject property.   .   .   . [T]he parties mutually agree to resolve the Tribe's claims and enter into a compromise settlement of some of the land claims at issue in [this lawsuit].

3

\* \* \* \* \*

> [The promises, etc., in this settlement agreement] represent a compromise . . . in settlement of the Tribe's land claims and potential land claims [in this suit];

\* \* \* \* \*

> 3.4. [The defendant] consents to the request of the Tribe to have the Claimed Lands taken into trust as part of the settlement of the Tribe's land claims . . . . ;

Doc. 218.

The effect of "incorporation" of these provisions would be to bring in through the back door what I was not willing to allow through the front door when I declined to sign the original proposed order: namely, my endorsement of the settling parties' views as to disputed issues. Among these are that the plaintiff is a successor in interest to the aboriginal occupiers of the lands in dispute, it has "viable and serious claims concerning" the lands covered by the Settlement Agreement, and the Agreement constitutes settlement of "land claims."

The Attorney General vigorously contests these and other claims and contentions. The State asserts, *inter alia*, that the plaintiff is not a successor to the original occupants and, in any event it does not have a colorable claim to the lands at issue, so that there is no basis or reason for anyone to settle such claims. Instead, in the State's view, this suit and the Settlement Agreements have been concocted solely to get property into the Tribe's hands in a way that enhances the likelihood that it ultimately can build and operate a casino or casinos on that property.

The revised proposed order is, therefore, no more acceptable to me than the original proposed order, in which I was to have more directly referenced the Settlement Agreements as involving "land claims."

This is so, despite the fact that the settling parties have included the following disclaimer in the revised proposed order: "Without making any findings of fact or conclusions of law with respect to merits of the case of the matters contained in the settlement agreements, the settlement agreements are approved by the Court and are thereby made an enforceable part of this Order as provided below." [Doc. 218, at 2].

At best, this language is inconsistent with the language in ¶ 8 of the revised proposed order, whereby the Settlement Agreements, with the above-recited provisions, are incorporated into the order. This creates an unwelcome, and potentially trouble-making ambiguity.

Language found after the phrase, "it is hereby ordered," would, in any event, have greater force and effect than narrative language preceding that portion of the order. Which, in turn, makes the revised proposed order no more acceptable than the original proposed order.

While I am always pleased when a case settles, I desire to remain completely neutral, and to take no action that would appear to favor either the plaintiff, the settling defendants, or the State of Ohio. Accordingly, I decline to sign the revised proposed order due to the flaws enumerated herein. Instead, I propose to enter the order of dismissal attached to this order, if agreeable to the parties and the Attorney General.

My principal purpose, were I to enter that order, would be to ensure that, as desired by the plaintiff and settling defendants, this court would retain jurisdiction to enforce the parties' Settlement Agreements, should such enforcement become desired or necessary. My authority to

5

retain jurisdiction for this limited purpose originates from the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

In that case the Court held that a district court does not automatically retain jurisdiction to enforce a settlement after entering an order of dismissal with prejudice. Enforcement of a settlement agreement is, the Court stated, "more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id*. at 378.

Under *Kokkonen* this court can retain jurisdiction over a settlement agreement by either: 1) making the settlement part of an order of dismissal; or 2) including a separate provision in the dismissal order retaining jurisdiction. *Id*. at 381. Merely referencing the settlement in the order of dismissal does not suffice to retain jurisdiction. *See, e.g., Caudill v. North Am. Media Corp.*, 200 F.3d 914, 917 (6th Cir. 2000); *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502 (6th Cir. 2000) (citing *Scelsa v. City University of New York*, 76 F.3d 37 (2d Cir.1996)).

As noted above, I decline to incorporate the terms and conditions of the parties' Settlement Agreement into an order of dismissal. That does not mean I am unwilling to exercise continuing jurisdiction to enforce those agreements. My proposed order accomplishes that limited objective, and does so in accordance with *Kokkenon* and the Sixth Circuit's decision in *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001) (upholding provision in dismissal order contemplating post-dismissal role for the court).[1]

---

[1] I note that the trial court's language in *Re/Max* was more ambiguous and less precise that the language to be incorporated in my dismissal order. *See* 271 F.3d at 671 (order stated, in pertinent part: "settled and dismissed with prejudice" and "[a]ny subsequent order setting forth different terms and conditions relative to the settlement and dismissal of the within action shall supersede the within order."). I seek to make as clear as I can that: 1) jurisdiction will be continuing; 2) for the sole and limited purpose of adjudicating motions to enforce.

**Conclusion**

The pending revised proposed order has the same defects as the original proposed order: namely, that its entry, through incorporation of the Settlement Agreements, could be perceived as accepting and endorsing the proposition that the settlements resolve "land claims" under the IGRA. Whether they do or not is something that I do not either wish to address or think to consider.

I will, if the parties want me to, retain jurisdiction to enforce the parties' Settlement Agreements. I will not approve those agreements, or otherwise take any action that endorses, or appears to endorse any of the statements contained therein.

It is, therefore,

ORDERED THAT:

1. The Revised Proposed Order [Doc. 218] submitted by the plaintiffs and settling defendants be, and the same hereby is rejected;

2. All parties, including the State of Ohio, shall notify the court on or before April 16, 2007, whether the attached Court's Proposed Order is acceptable to them; if so, it shall be entered ; if not, the Clerk shall set a date and time for a telephonic scheduling conference.

So ordered.

                                            s/James G. Carr
                                            James G. Carr
                                            Chief Judge